**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

|   |   |   |
|---|---|---|
| | : | |
| **DEBORAH HECKENSWEILER, on her own** | : | |
| **behalf, and as Administratrix of the Estate of** | : | |
| **John Heckensweiler, deceased, et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| **vs.** | : | **CIVIL NO. 06-4151** |
| | : | |
| **CHIEF BRIAN K. MCLAUGHLIN, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

_____

**RUFE, J.**                                                                                  **May 18, 2007**

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter comes before the Court on three motions to dismiss the Complaint,

filed under Federal Rule of Civil Procedure 12(b)(6).  After reviewing the Complaint,

Defendants' briefs, and Plaintiffs' briefs in opposition, the Court will **GRANT IN PART** and

**DENY IN PART** the motions, for the reasons explained below.


**BACKGROUND**

The facts underlying this lawsuit are undeniably tragic.  On the morning of

September 16, 2004, John Heckensweiler walked out of his house, which was surrounded by

law-enforcement officers who had waited through the night to take him into custody.

Heckensweiler was suffering from mental illness and the law-enforcement officers were there to

serve him with a commitment order.  Heckensweiler exited the house, holding a shotgun in one

hand and a handgun in the other.  Heckensweiler then "placed the shotgun in his mouth and

pulled the trigger, ending his life."[1]  This suit followed, which seeks to hold the law-enforcement

officers liable for causing Heckensweiler's suicide, among other things.

> Because this case is still in the pleadings stage, the Court construes the allegations

in the Complaint as true.[2]  According to the Complaint, at the time of this incident,

Heckensweiler, his wife Deborah, and their 10-year-old son Zachary, lived in an eighteenth-

century historic farmhouse in Reigelsville, Pennsylvania, owned by Terry Musselman.[3]

Heckensweiler developed a mental illness in August 2004, "manifested as sleep disturbance,

paranoid ideation, delusions, and obsessive/compulsive behavior."[4]  When Heckensweiler's

symptoms worsened, Deborah recommended that he seek professional help, which he refused.[5]

This prompted Deborah to seek an administrative order for an involuntary mental-health

evaluation of Heckensweiler under the Pennsylvania Mental Health and Mental Retardation Act.[6]

She received this order on September 15, 2004.[7]

> On that day, Heckensweiler's father, Ralph Heckensweiler, drove to his son's

home to encourage him to seek treatment.[8]  At 3:30 p.m., Chief Brian McLaughlin of the

---

[1]  Compl. ¶ 36.

[2]  Worldcom, Inc. v. Graphnet, Inc., 343 F.3d 651, 653 (3d Cir. 2003).

[3]  Compl. ¶¶ 5, 15.

[4]  Id. ¶ 15.

[5]  Id. ¶ 18.

[6]  50 Pa. Cons. Stat. § 4101 et seq.

[7]  Id. ¶ 18.

[8]  Id. ¶ 19.

Springfield Township Police arrived at the Heckensweiler residence with several officers from his Department, to serve the commitment order and take Heckensweiler into custody.[9] Heckensweiler refused to submit to custody, insisting that he had not committed any crime justifying his arrest.[10]  A discussion then began between Heckensweiler, his father, Chief McLaughlin, and another Springfield Township police officer.[11]  When asked if he was armed, Heckensweiler "replied that he had a permitted firearm and showed police officers that it was tucked into his waistband."[12]

Heckensweiler then went back inside, and Chief McLaughlin and the other officer "unsuccessfully attempted to secure [Heckensweiler] as he entered the house."[13]  Heckensweiler then "turned back to the door where he engaged in an approximately 25 minute discussion with his father, and the two said police officers."[14]  "During this time the two officers were within arm's reach of [Heckensweiler], even lighting several cigarettes for him."[15]  "Despite their close proximity to [him], and the distraction of the cigarettes, no attempt was made to take [Heckensweiler] into custody."[16]  When the discussion ended, Heckensweiler closed the door and

---

[9] Id. ¶ 20.

[10] Id. ¶ 21.

[11] Id. ¶ 22.

[12] Id. ¶ 23.

[13] Id. ¶ 24.

[14] Id. ¶ 25.

[15] Id.

[16] Id.

went up to the second floor, "without any attempt at intervention by the police."[17]

The police then "moved [Heckensweiler's] father off of the back porch and to a location across the street."[18]  The police sealed the Heckensweiler residence and the adjacent land.[19]  Chief McLaughlin told Heckensweiler's father that their strategy would be to "wait it out, as long as it took until [he] surrendered himself into police custody."[20]  Apparently, no one was inside the house with Heckensweiler—his wife was at her parents' house,[21] and Heckensweiler's father was "moved to the Springfield Township municipal building where some of the telephone negotiations with [Heckensweiler] were taking place."[22]

According to the Complaint, these negotiations took the form of a "military style showdown,"[23] with Heckensweiler alone in the house, surrounded by law-enforcement officers on the property outside.  Officers from the Bucks County Emergency Response Team ("Bucks ERT"), as well as the Pennsylvania State Police Bureau of Emergency and Special Operations, arrived on the scene and participated in the negotiation process, which continued into the night, until the next morning.[24]

---

[17]  Id. ¶ 26.

[18]  Id. ¶ 27.

[19]  Id.

[20]  Id. ¶ 28.

[21]  Id. ¶ 31.

[22]  Id. ¶ 30.

[23]  Id. ¶ 37.

[24]  Id. ¶¶ 33, 34.

The Complaint alleges that during these negotiations, law-enforcement officers: (1) threatened Heckensweiler that he would be arrested on felony charges and taken to Bucks County Prison;[25] (2) disconnected the electricity to Heckensweiler's residence;[26] (3) taunted Heckensweiler, "repeatedly telling him that he was 'all talk'";[27] and (4) "blasted loud music or noise, and other screeching noises into the house."[28]

As the night wore on, during the early morning hours of September 16, 2004, officers of the Pennsylvania State Police Bureau of Emergency and Special Operations "began firing hundreds of canisters of OC pepper spray" into Heckensweiler's residence, as well as "many lethal breaching projectiles."[29] This activity caused "massive destruction to the Heckensweiler residence, including damage to outbuildings, . . . and served only to exacerbate [Heckensweiler's] mental condition."[30] Apparently, Heckensweiler had a gas mask, which he used to protect himself against the fumes.[31] Finally, shortly after the launching of the pepper-spray canisters and the projectiles, Heckenweiler "emerged from the house with a shotgun and handgun pointed into the air."[32] "He circled the backyard, yelling to police officers 'you're

---

[25] Id. ¶ 33(a).

[26] Id. ¶ 33(b).

[27] Id. ¶ 33(d).

[28] Id. ¶ 33(e).

[29] Id. ¶ 34.

[30] Id. ¶ 39. The Complaint further alleges that the "attack" on the Heckensweiler residence "resulted in damage to the historic structure, including destruction of all 31 antique windows . . . in excess of $ 60,000." Id. ¶ 40.

[31] Id. ¶ 35.

[32] Id. ¶ 36.

limiting my options.'"[33] "He returned to the back door whereupon he placed the shotgun in his mouth and pulled the trigger, ending his life."[34]

On September 15, 2006, the Plaintiffs filed this lawsuit to recover for injuries sustained by the acts described above.  There are three Plaintiffs: (1) the Estate of John Heckensweiler ("the Estate"); (2) Deborah Heckensweiler; and (3) Terry Musselman.  The Complaint names eight Defendants, in addition to John/Jane Does 1–20.[35]  The named Defendants are: (1) Chief McLaughlin and Springfield Township ("The Township Defendants"); (2) Chief James Donnelly of the Bucks ERT, and the County of Bucks ("The County Defendants"); and (3) Colonel Jeffrey B. Miller of the Pennsylvania State Police, Sergeant Edward C. Murphy of the Pennsylvania State Police, the Pennsylvania State Police, and the Commonwealth of Pennsylvania ("The Commonwealth Defendants").  The Plaintiffs have asserted claims against the Defendants based on eight different legal theories.[36]

The Township Defendants, Commonwealth Defendants, and Chief Donnelly have all filed Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(6), to which the Plaintiffs have responded.  All three of these motions are now ripe for decision.

---

[33] Id.

[34] Id.

[35] Plaintiffs have until June 16, 2007 to amend their Complaint to add the names of any specific law-enforcement officers that may be elicited through discovery.

[36] Plaintiffs' federal claims are based on 42 U.S.C. § 1983, and Title II of the Americans With Disabilities Act, 42 U.S.C. §§ 12131–34.  Plaintiffs also press claims for relief under Pennsylvania law based on  negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress.  Deborah Heckensweiler asserts claims under the Pennsylvania wrongful-death statute, and for loss of consortium.

## DISCUSSION

### A.  Legal Standard under Rule 12(b)(6)

The settled rule in the Third Circuit, as in all the federal courts, is that "[d]ismissal for failure to state a claim is appropriate only if it 'appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"[37] To make this determination, the court must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom."[38] While the court should give plaintiff the benefit of every doubt, the court need not assume that the plaintiff can prove facts that he has not alleged in his complaint.[39]

### B.  COUNT I: Alleged Constitutional Violations

Count I asserts claims that the Defendants violated both the U.S. Constitution and the Pennsylvania Constitution.

The Court first turns to Plaintiffs' federal constitutional claims.  Count I asserts claims on behalf of all Plaintiffs, against the Township Defendants, the County Defendants, and both Colonel Miller and Sergeant Murphy, for violations of the U.S Constitution under 42 U.S.C. § 1983.  Under the law of this Circuit, "[t]o make out a prima facie case under § 1983, the plaintiff must demonstrate that a person, acting under color of law, deprived him of a federal

---

[37]  Worldcom, Inc. v. Graphnet, Inc., 343 F.3d 651, 653 (3d Cir. 2003) (quoting Conley v. Gibson, 355 U.S. 41, 45–46 (1957)).

[38]  Krantz v. Prudential Invs. Fund Mgmt. LLC, 305 F.3d 140, 142 (3d Cir. 2002) (quotation omitted).

[39]  City of Pittsburgh v. West Penn Power Co., 147 F.3d 256 (3d Cir. 1998).

right."[40]

Applying this rule, it is clear that the first element is satisfied: Chief McLaughlin, Chief Donnelly, Colonel Miller, Sergeant Murphy, and Springfield Township each meet the definition of "person" for the purposes of § 1983.[41]  Second, the Complaint alleges that the Defendants acted in their official capacity as law-enforcement officers and agencies, and therefore acted under the color of law.[42]  The third element of the § 1983 claim, however—whether the deprivation of a constitutional right has been alleged—is somewhat less clear.

Count I alleges violations of the Fourth, Eighth, and Fourteenth Amendments. Among the responding Defendants, only one substantive challenge has been raised—to the characterization of the facts as cruel and unusual punishment under the Eighth Amendment.  The Court must sustain this challenge.  Under Supreme Court precedent, "[t]he state does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.  Where the state seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment."[43]  Indeed, there are no allegations in the Complaint that Heckensweiler was prosecuted criminally and punished by the state.

---

[40] Berg v. County of Allegheny, 219 F.3d 261, 268 (3d Cir. 2000).

[41] Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978) ("Congress did intend municipalities and other local government units to be included among those persons to whom § 1983 applies.").

[42] West v. Atkins, 487 U.S. 42, 50 (1988) ("[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.").

[43] Bell v. Wolfish, 441 U.S. 520, 537 (1979).

Accordingly, the Eighth Amendment does not apply to these facts, and the Court will dismiss any claims based on it.

As to the claims under the Fourth and Fourteenth Amendment, the Complaint does not describe specifically which acts correspond to which purported constitutional violation, but claims somewhat generally that the Defendants' acts, their official policies, and their failure to train their employees, resulted in, inter alia, "unreasonable use of force or use of excessive force," "an unlawful seizure of [Heckensweiler's] person," a delay of "urgently needed medical treatment," "a deprivation of life and liberty," and so forth.[44]  The responding Defendants do not challenge Plaintiffs' characterization of these facts as violations of Heckensweiler's Fourth or Fourteenth Amendment rights.

The Township Defendants, do however, take issue with the characterization of these facts as constituting a Fourth Amendment violation of Plaintiff Musselman.  The Township Defendants argue that he has not properly pled a constitutional tort, because the Complaint does not mention his name in the language of Count I.  The Court agrees that Count I of the Complaint is unartfully drafted, in that it neglects to specifically describe a constitutional tort against Musselman, but the Fourth Amendment claim is implied nonetheless.  The Complaint alleges that Musselman owns the Heckensweiler residence,[45] and that the Defendants caused "[e]xtensive damage" to the residence.[46]  Further, Count I is brought on behalf of "All

---

[44] Compl. ¶ 46.

[45] Compl. ¶ 5.

[46] Compl. ¶ 46(n)(5).

Plaintiffs."[47]   Therefore, because the standard for pleading under the Federal Rules is liberal, and because the courts have recognized that property damage by state officers can amount to an unlawful "seizure" under the Fourth Amendment,[48] the Court will not dismiss Musselman's constitutional-tort claim under Count I at this stage.

Next, Sergeant Murphy and Colonel Miller point out that although they are listed as Defendants in the Complaint, they are not alleged to have been personally involved in the acts described, and that therefore the § 1983 claims against them should be dismissed.   Under the law of this Circuit, in order to sue a government official under 42 U.S.C. § 1983, the individual government defendant "'must have personal involvement in the alleged wrongs . . . [which is shown] through allegations of personal direction or of actual knowledge and acquiescence.'"[49] The Complaint alleges that both Sergeant Murphy and Colonel Miller "supervised or controlled one or more of the other Defendants herein in their conduct or actions, or acted in concert with them in the performance of their conduct or actions, or acted independently."[50]  These are sufficiently pleaded allegations that Murphy and Miller personally directed or otherwise participated in the standoff.  Thus, the Court cannot, at this stage of the proceedings, dismiss the

---

[47] Compl., at 16.

[48] See, e.g., Brown v. Muhlenberg Twp., 269 F.3d 205, 209 (3d Cir. 2001) (Fourth Amendment implicated whenever there is some meaningful interference with an individual's possessory interests in personal property; in that case, court held that police officer who shot and killed plaintiff's dog could be found liable for tort damages under Fourth Amendment).

[49] Thomas v. Independence Twp., 463 F.3d 285, 298 (3d Cir. 2006) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).

[50] Compl. ¶¶ 7, 9.

claims.[51]

Finally, the Township Defendants argue that the Court should strike the demand for punitive damages.  The Supreme Court has held that punitive damages against municipalities are not allowed under § 1983.[52]  Accordingly, the Court will dismiss the demand for punitive damages under Plaintiffs' § 1983 claims as it pertains to the municipal Defendants.

Count I also requests relief under Article I, Section 8 of the Pennsylvania Constitution,[53] which is the state-level analog to the Fourth Amendment of the U.S. Constitution. The Pennsylvania Courts have held, however, that because the protections of Article I, Section 8 and the Fourth Amendment are coextensive, "there is no separate cause of action for monetary damages for the use of excessive force in violation of Article I, Section 8 of the Pennsylvania Constitution.[54]  Thus, the Court will dismiss Plaintiffs' claims under this state constitutional provision as well.

## C.  COUNT II: Claims Under the Americans With Disabilities Act

In Count II, the Estate and Deborah Heckensweiler seek relief against all

---

[51] The Court notes, however, that Plaintiffs also argue that Sergeant Murphy, Colonel Miller, and Chief Donnelly are properly named as Defendants because of their alleged "failure to train" subordinate officers how to handle a mentally-ill subject like Heckensweiler.  But only a city or municipality can be held liable under the "failure to train" theory.  See City of Canton v. Harris, 489 U.S. 378, 389 (1989) (referring to a "municipality's failure to train its employees").  Individual officers, on the other hand cannot be held liable under such a theory.  Thus, only those claims that allege that the officers personally violated the Plaintiffs' constitutional rights will remain.

[52] Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981).

[53] "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant."  Pa. Const. art I, § 8.

[54] Jones v. City of Philadelphia, 890 A.2d 1188, 1216 (Pa. Commw. Ct. 2006).

Defendants for violation of Title II of the Americans With Disabilities Act of 1990 ("ADA").

Title II of the ADA, which prohibits disability discrimination in the provision of public services,

provides that "no qualified individual with a disability shall, by reason of such disability, be

excluded from participation in or be denied the benefits of the services, programs, or activities of

a public entity, or be subjected to discrimination by any such entity."[55]  The question of whether

the allegations in the Complaint support a cause of action under this language is essentially one

of statutory interpretation.  And in construing the text, the Court looks first to its plain or

ordinary meaning.

   Preliminarily, the Court notes that Count II of the Complaint does not allege that

Deborah Heckensweiler is a "qualified individual with a disability."  Therefore, she is not

entitled to pursue a claim under Title II of the ADA as a matter of law.  The Court will therefore

dismiss her claims in Count II.

   Next, the Court turns to the Estate's ADA claims.  Because Title II of the ADA

applies only to the "services, programs, or activities of a public entity," the Estate may not press

ADA claims against Colonel Miller, Sergeant Murphy, Chief McLaughlin, and Chief Donnelly in

their individual capacities.[56]  Therefore, the Court will dismiss the Estate's ADA claims against

those four defendants.

   The Court next turns to the heart of the Estate's ADA claim, which alleges that

---

[55]  42 U.S.C. § 12132.

[56]  Congress included "any state or local government" in its definition of public entity, but did not include individuals.  42 U.S.C. § 12131(1)(A).

Heckensweiler "was suffering from a mental disability" at the time of the incident,[57] and that "Defendants violated [Heckensweiler's] federally guaranteed right to be free from discrimination on the basis of disability by failing to make reasonable modifications to their policies, practices and procedures to ensure that his needs as an individual with a disability would be met."[58]  There is no dispute that Count II alleges that Heckensweiler was an individual with a disability, nor is there any dispute that Springfield Township, Bucks County, the Pennsylvania State Police, and the Commonwealth of Pennsylvania are public entities under Title II.  Thus, the issue for decision is whether Heckensweiler was denied the benefits of a service, program, or activity of these public entities, by reason of his purported disability.

The Court first considers whether the allegations describe a service, program, or activity, of which Heckensweiler was entitled to receive the full benefit.  Although the Third Circuit has not decided whether an arrest is a "service" or "activity" under Title II of the ADA, it has held that those terms are to be read very broadly.  In <u>Yeskey v. Pennsylvania Department of Corrections</u>,[59] the Court of Appeals held that the Deparment of Corrections' Motivational Boot Camp was a "program" under Title II of the ADA, after interpreting the terms "program or activity" as "all-encompassing."[60]  The U.S. Supreme Court, in a unanimous opinion affirming that decision, noted that because the broad language "services, programs, or activities" includes no exceptions or qualifications, that Congress intended for the terms to have liberal application.

---

[57]  Compl. ¶ 48.

[58]  <u>Id.</u> ¶ 49.

[59]  118 F.3d 168 (3d Cir. 1997), <u>aff'd</u>, <u>Pa. Dep't of Corrections v. Yeskey</u>, 524 U.S. 206 (1998).

[60]  <u>Id.</u> at 170.

The Court stated, "the fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity.  It demonstrates breadth."[61]  Based on this reasoning, the Court concludes that serving an involuntary mental-health commitment order in a safe manner is a service or activity covered by Title II, and that Heckensweiler was entitled to the benefit of that service.

The Court next turns to the question of whether Heckensweiler has alleged that he was "denied the benefit" of a safe involuntary commitment, "by reason of his disability."  The Complaint alleges that the Defendants did not "make reasonable modifications to their policies, practices and procedures to ensure that his needs as an individual with a disability would be met."[62]  The implication is that had the Defendants served the involuntary commitment order in a manner that took Heckensweiler's mental state into account, he would not have committed suicide.  The Court therefore interprets the allegations as stating that Heckensweiler was denied the benefit of a reasonably safe involuntary commitment, based on his purported disability.[63]

Hence, the Court concludes that the Estate has stated valid claims under the ADA against Springfield Township, Bucks County, the Pennsylvania State Police, and the Commonwealth of Pennsylvania.[64]

---

[61]  524 U.S. 206, at 212.

[62]  Id. ¶ 49.

[63]  The Court also notes that two recent district-court decisions in this Circuit have sustained Title II ADA claims on Rule 12(b)(6) motions, based on facts similar to this case.  See Hogan v. City of Easton, 2004 U.S. Dist. LEXIS 16189 (E.D. Pa. Aug. 15, 2004) (disabled man with personality disorders injured by police officers responding to wife's 911 call); Schorr v. Borough of Lemoyne, 243 F. Supp. 2d 232 (M.D. Pa. 2003) (officers shot and killed disabled man with bipolar disorder while trying to involuntarily commit him).

[64]  The Commonwealth Defendants have not asserted sovereign immunity as a basis for dismissal of the ADA claims.  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 (1984) (Eleventh Amendment bars actions for money damages in federal court whenever "the state is the real, substantial party in interest").  Hence, the

**D.  State-law Claims (Counts III through VII)**

Finally, Plaintiffs press six state-law claims against Defendants: negligence (Count III); survival (Count IV); wrongful death (Count V); intentional infliction of emotional distress (Count VI); negligent infliction of emotional distress (Count VII); and loss of consortium (Count VIII).

Preliminarily, the Court turns to Count IV, which the Complaint styles as a "survival action."  Under Pennsylvania law, however, the survival statute does not provide for an independent cause of action.  Rather, it provides merely a vehicle for a decedent's estate to press causes of action that the decedent would have had, had he lived.[65]  Therefore, because there is no independent survival action under Pennsylvania law, the Court will dismiss Plaintiffs' claims under Count IV against all Defendants.

Next, the Court addresses the state statutory immunity defense, with respect to the remaining five state-law Counts.

First, Springfield Township, which is a local agency under Pennsylvania law,[66] is generally immune from suit under state law.[67]  The Pennsylvania legislature has provided certain

---

Court will not address that defense at this time.  Febres v. Camden Bd. of Educ., 445 F.3d 227, 229 (3d Cir. 2006) ("The party asserting [Eleventh Amendment] immunity bears the burden of production and persuasion.").

[65]  See 42 Pa. Cons. Stat. Ann. § 8302 (2007) ("All causes of action or proceedings real or personal, shall survive the death of the plaintiff or defendant.").

[66]  See id. (local agency is "[a] government unit other than the Commonwealth government").

[67]  See id. § 8541 ("Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.").

exceptions to this immunity, but they apply only when "[t]he injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the [eight enumerated] categories."[68]  Those categories are: (1) vehicle liability; (2) care, custody, or control of personal property; (3) real property; (4) trees, traffic controls, and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) the care, custody, or control of animals.[69]  Plaintiffs have not described how the allegations in the Complaint bring Springfield Township's conduct within any of these eight exceptions, nor does the Court independently find that any of these exceptions applies.  And because the exceptions to immunity cover only "negligent acts," Springfield Township is categorically immune from any intentional acts (e.g. intentional infliction of emotional distress).[70]  Therefore, the Court will dismiss Counts III through VIII against Springfield Township.

Next, Chief McLaughlin, as an agent of Springfield Township, generally shares the same immunity as the Township.[71]  State law, however, provides for an exception for "willful misconduct."[72]  Therefore, although as an individual, Chief McLaughlin is immune from the

---

[68] Id. § 8542(a)(2).

[69] Id. § 8542(b).

[70] See Cassidy v. Abington Twp., 571 A.2d 543, 545 (Pa. Commw. Ct. 1990) ("[A] township is not liable for injuries caused by the acts of its employee which constitute a crime, actual fraud, actual malice or willful misconduct.").

[71] 42 Pa. Cons. Stat. Ann. § 8545 (2007) ("An employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter.").

[72] Id. § 8550 ("In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted . . . willful misconduct, [the immunity defense] shall not apply.").  The Pennsylvania Courts have held that "[f]or the purposes of the Code, 'willful misconduct' has the same meaning as

claims based on negligence, he is not personally immune from Plaintiffs' claim for intentional infliction of emotional distress, or any damages arising out of that conduct.

Under Pennsylvania law, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."[73] The Complaint alleges that Chief McLaughlin supervised negotiations between the Springfield Police and Heckensweiler.[74]  During these negotiations, the police allegedly disconnected Heckensweiler's electricity, and also threatened to arrest him on felony charges should he fail to cooperate.[75]  Later, "officers, believed to be members of the Pennsylvania State Police Bureau of Emergency and Special Operations, began firing hundreds of canisters of OC pepper spray" into the house.[76]  Negotiators also "blasted loud music or noise, and other screeching noises into the house."[77]  Plaintiffs allege that Defendants knew that Heckensweiler could be emotionally unstable, and that this "showdown"-style negotiation precipitated his suicide.  Thus, viewed in the light most favorable to Plaintiffs, the Court concludes that these allegations could describe extreme and outrageous conduct on the part of the police generally.  Therefore, to the extent that Chief McLaughlin intentionally ordered or directed any of these negotiation activities, with the

---

the term 'intentional tort.'" Delate v. Kolle, 667 A.2d 1218, 1221 (Pa. Commw. Ct. 1995).

[73] Hoy v. Angelone, 720 A.2d 745, 753 (Pa. 1998) (quoting Restatement (Second) of Torts § 46(1)).

[74] Compl. ¶ 33.

[75] Id.

[76] Id. ¶ 34.

[77] Id. ¶ 33.

knowledge that Heckensweiler might be mentally ill, he could be personally liable for intentionally causing Heckensweiler's emotional distress.  Thus, the Court will not dismiss Count VI against Chief McLaughlin at this early stage of the litigation.

Moreover, the Court will not dismiss Count V (wrongful death), and Count VIII (loss of consortium) against Chief McLaughlin, because these counts seek damages that might flow from that alleged willful misconduct.  The Pennsylvania wrongful-death statute provides for the recovery of damages "for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another."[78]  Thus, to the extent that Chief McLaughlin's alleged willful misconduct caused Heckensweiler's suicide, he is not shielded by immunity.  Similarly, loss of consortium, although a "a separate and distinct claim,"[79] is essentially a claim for spousal damages to compensate for "a loss of services, society, and conjugal affection of one's spouse."[80]  Here, too, the immunity shields Chief McLaughlin against this claim only to the extent that the loss of consortium is caused by his alleged negligence.  To the extent that his alleged willful misconduct caused the spousal damages, the immunity is waived.

Therefore, the Court will dismiss Counts III and VII against Chief McLaughlin, because they arise out of alleged negligence, but Counts V, VI, and VIII against him will remain, for the reasons stated above regarding willful misconduct.

This same analysis applies to Chief Donnelly, who, as an agent of Bucks County, shares immunity of the County, except for any damages caused by willful misconduct.  The

---

[78]  42 Pa. Cons. Stat. Ann. § 8301(a) (2007).

[79]  Darr Constr. Co. v. Workmen's Comp. Appeal Bd., 715 A.2d 1075, 1080 (Pa. 1998).

[80]  Id.

Court will likewise dismiss Counts III and VII against Chief Donnelly, but will sustain Counts V, VI, and VIII against him.

Finally, the Court turns to the state-law claims against Colonel Miller and Sergeant Murphy.  The Pennsylvania Courts have held that "the Commonwealth, *and its officials and employees*, enjoy the same statutory sovereign immunity."[81]  Under Pennsylvania statutory law, the Commonwealth retains blanket sovereign immunity,[82] which is waived in only nine specific cases.  These exceptions, similar to the eight exceptions to governmental immunity for local agencies described above, apply when the Commonwealth acts negligently in the following cases: (1) vehicle liability; (2) medical-professional liability; (3) care, custody, or control of personal property; (4) Commonwealth real estate, highways, and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody, or control of animals; (7) liquor-store sales; (8) National Guard activities; and (9) toxoids and vaccines.[83]  Again, Plaintiffs have not discussed how any of these exceptions applies, nor does the Court independently conclude that any of them applies.  Therefore, the Court will dismiss Claims III and VII against Colonel Miller and Sergeant Murphy.

And, unlike Chief McLaughlin, who is a local official, Colonel Miller and Sergeant Murphy are also immune for claims based even on intentional torts, provided that they

---

[81]  Moore v. Commonwealth, Dept. of Justice, 538 A.2d 111, 115 (Pa. Commw. Ct. 1988) (emphasis in original).

[82]  See 42 Pa. Cons. Stat. Ann. § 8521 (2007).

[83]  Id. § 8522(b).

arise out of acts taken in their official capacities.[84]   The Complaint alleges merely that Colonel

Miller and Sergeant Murphy "supervised or controlled one or more of the other Defendants

herein in their conduct or actions, or acted in concert with them in the performance of their

conduct or actions, or acted independently."[85]   The Complaint does not include any other details

about what Colonel Miller or Sergeant Murphy are alleged to have done.   Therefore, even if the

Court construes these vague allegations to mean that Miller and Murphy intentionally engaged in

outrageous conduct that harmed Heckensweiler, they are immune from this claim, since they are

alleged to have supervised other officers, acted in concert with other officers, or acted

independently in this operation—i.e., they are alleged to have acted in their capacities as

Commonwealth agents.   Therefore, because they are protected by statutory immunity under state

law, the Court will dismiss Counts V, VI, and VIII against them as well.


            An appropriate Order follows.


---

[84]   See Yakowicz v. McDermott, 548 A.2d 1330, 1334 n.5 (Pa. Commw.  Ct. 1988) ("We note that the
immunity defense provided by the General Assembly to local agencies and their employees in 42 Pa. C.S. §§
8541–8564 is lost to local agency employees where their actions which cause injury constitute a 'crime, actual fraud,
actual malice or willful misconduct.' . . . The General Assembly has *not* included any such abrogation of the
immunity provided to Commonwealth agency employees.") (internal citation omitted; emphasis in original).

[85]   Compl. ¶¶ 7, 9.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DEBORAH HECKENSWEILER, on her own behalf, and as Administratrix of the Estate of John Heckensweiler, deceased, et al.,** : : : : | |
| **Plaintiffs,** : | |
| **vs.** : | **CIVIL NO. 06-4151** |
| : | |
| **CHIEF BRIAN K. MCLAUGHLIN, et al.,** : : | |
| **Defendants.** : | |

## ORDER

**AND NOW**, this 18th day of May 2007, upon consideration of the

Commonwealth Defendants' Motion to Dismiss [Doc. # 8], and the Plaintiffs' Opposition thereto

[Doc. # 12]; the Township Defendants' Motion to Dismiss [Doc. # 9], and the Plaintiffs'

Opposition thereto [Doc. # 18]; and Chief Donnelly's Motion to Dismiss [Doc. # 13], and the

Plaintiffs' Opposition thereto [Doc. # 19], it is hereby

**ORDERED**, that the Motions to Dismiss [Doc. ## 8, 9, and 13] are **GRANTED**

**IN PART** and **DENIED IN PART**; it is further

**ORDERED**, that Plaintiffs' claims in Count I for Eighth Amendment violations

are **DISMISSED WITHOUT PREJUDICE**; it is further

**ORDERED**, that Plaintiffs' claims in Count I for violations of the Fourth and

Fourteenth Amendments **REMAIN** with respect to Colonel Miller, Sergeant Murphy, Chief

Donnelly, Chief McLaughlin, and Springfield Township; it is further

**ORDERED**, that Plaintiffs' demand for punitive damages based on Count I is **DISMISSED WITH PREJUDICE** as it pertains to any of the municipal Defendants; it is further

**ORDERED**, that Plaintiffs' claims under Article I, Section 8 of the Pennsylvania Constitution are **DISMISSED WITH PREJUDICE**; it is further

**ORDERED**, that Plaintiff Deborah Heckensweiler's claims under Title II of the Americans With Disabilities Act are **DISMISSED WITHOUT PREJUDICE**; it is further

**ORDERED**, that the Estate's claims under Title II of the Americans With Disabilities Act are **DISMISSED WITH PREJUDICE** with respect to Colonel Miller, Sergeant Murphy, Chief McLaughlin, and Chief Donnelly; it is further

**ORDERED**, that the Estate's claims under Title II of the Americans With Disabilities Act **REMAIN** with respect to Springfield Township, Bucks County, the Pennsylvania State Police, and the Commonwealth of Pennsylvania; it is further

**ORDERED**, that Plaintiffs' claims under Count IV are **DISMISSED WITH PREJUDICE**; it is further

**ORDERED**, that Plaintiffs' claims under Counts III through VIII are **DISMISSED WITHOUT PREJUDICE** with respect to Springfield Township; it is further

**ORDERED**, that Plaintiffs' claims under Counts III and VII, are **DISMISSED WITHOUT PREJUDICE** with respect to Chief McLaughlin and Chief Donnelly; it is further

**ORDERED**, that Plaintiffs' claims under Counts V, VI, and VIII **REMAIN** with respect to Chief McLaughlin and Chief Donnelly; it is further

**ORDERED**, that Plaintiffs' claims under Counts III through VIII are

-2-

**DISMISSED WITHOUT PREJUDICE** with respect to Colonel Miller and Sergeant Murphy; and it is further

        **ORDERED**, that Plaintiffs' claims under Counts I through VIII **REMAIN** with respect to Bucks County.

        As set forth in the Court's Scheduling Order [Doc. # 21], the Plaintiffs have leave to file any amended pleadings on or before June 16, 2007.

        It is so **ORDERED**.

        **BY THE COURT:**

        **/s/ Cynthia M. Rufe**

        _____

        **CYNTHIA M. RUFE,  J.**