IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEBORAH HECKENSWILER, on her own behalf, and as Administratrix of the Estate of John Heckensweiler, deceased, et al.,   :   :   :   :   Plaintiffs,   :   vs.   :   CHIEF BRIAN K. MCLAUGHLIN, et al.,   :   Defendants.   :   : | CIVIL NO. 06-4151 |

**RUFE, J.**                                                                                                      **August 8, 2008**

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on four separate Defense Motions for Summary Judgment and one Reply brief from Defendants Pennsylvania State Police, Murphy and Miller. At this time, these motions are unopposed. The Court cannot consider the Motions ripe for determination, for the reasons explained below.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

The facts that follow are derived from the Plaintiffs' Amended Complaint and this Court's Memorandum Opinion and Order of May 21, 2007, and are viewed in the light most favorable to the non-moving party.[1]  While it is preferred at the summary judgment stage to evaluate facts from the parties' submissions, the Court is without a such a developed record and must resort at this time to those well-pleaded facts in the Plaintiffs' Amended Complaint.

---

[1] [Doc. No. 24]; Debiec v. Cabot Corp., 352 F.3d 117, 128 (3d Cir. 2003); Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch, 510 F.3d 253, 260 (3d Cir. 2007).

On the morning of September 16, 2004, the decedent, John Heckenswiler was surrounded by law-enforcement officers who had been at his home for roughly seventeen hours to take him into custody at his wife Deborah Heckenswiler's request. Heckenswiler was suffering from mental illness and law-enforcement officers were there to serve him with a civil commitment order which his wife had obtained. Heckenswiler exited the house, holding a shotgun in one hand and a handgun in the other. Heckenswiler then "placed the shotgun in his mouth and pulled the trigger, ending his life."[2] This suit followed, which seeks to hold the law-enforcement officers liable for causing Heckenswiler's suicide, among other things.

At the time of this incident, the Heckenswilers and their 10-year-old son, lived in an eighteenth-century historic farmhouse in Reigelsville, Pennsylvania, owned by Terry Musselman.[3] Heckenswiler developed a mental illness in August 2004, "manifested as sleep disturbance, paranoid ideation, delusions, and obsessive/compulsive behavior."[4] When Heckenswiler's symptoms worsened, his wife recommended that he seek professional help, which he refused.[5] This prompted her to seek an administrative order for an involuntary mental-health evaluation of Heckenswiler under the Pennsylvania Mental Health and Mental Retardation Act.[6] She received this order on September 15, 2004.[7]

---

[2] Amend. Compl. ¶ 36.

[3] Amend. Compl. ¶¶ 5, 15.

[4] Id. ¶ 15.

[5] Id. ¶ 18.

[6] 50 Pa. Cons. Stat. § 4101 et seq.

[7] Amend. Compl. ¶ 18.

That same day, Heckenswiler's father, Ralph Heckenswiler, drove to his son's home to encourage him to seek treatment.[8] At 3:30 p.m., Chief Brian McLaughlin of the Springfield Township Police arrived at the Heckenswiler residence with several officers from his Department, to serve the commitment order and to take Heckenswiler into custody.[9] Heckenswiler refused to submit to custody, insisting that he had not committed any crime justifying his arrest.[10] A discussion then began between Heckenswiler, his father, Chief McLaughlin, and another Springfield Township police officer.[11] When asked if he was armed, Heckenswiler "replied that he had a permitted firearm and showed police officers that it was tucked into his waistband."[12]

Heckenswiler then went back inside, and Chief McLaughlin and the other officer "unsuccessfully attempted to secure [Heckenswiler] as he entered the house."[13] Heckenswiler then "turned back to the door where he engaged in an approximate 25 minute discussion with his father, and the two said police officers."[14] "During this time the two officers were within arm's reach of [Heckenswiler], even lighting several cigarettes for him."[15] "Despite their close proximity to [him], and the distraction of the cigarettes, no attempt was made to take

---

[8] Id. ¶ 19.

[9] Id. ¶ 20.

[10] Id. ¶ 21.

[11] Id. ¶ 22.

[12] Id. ¶ 23.

[13] Id. ¶ 24.

[14] Id. ¶ 25.

[15] Id.

[Heckenswiler] into custody."[16] When the discussion ended, Heckenswiler closed the door and went up to the second floor, "without any attempt at intervention by the police."[17]

The police then "moved [Heckenswiler's] father off of the back porch and to a location across the street."[18] The police sealed the Heckenswiler residence and the adjacent land.[19] Chief McLaughlin told Heckenswiler's father that their strategy would be to "wait it out, as long as it took until [he] surrendered himself into police custody."[20] Apparently, no one was inside the house with Heckenswiler—his wife was at her parents' house,[21] and Heckenswiler's father was again moved "to the Springfield Township municipal building where some of the telephone negotiations with [Heckenswiler] were taking place."[22]

According to the Complaint, these negotiations took the form of a "military style showdown,"[23] with Heckenswiler alone in the house, surrounded by law-enforcement officers on the property outside. Officers from the Bucks County Emergency Response Team ("S.E.R.T."), as well as the Pennsylvania State Police Bureau of Emergency and Special Operations, arrived on the scene and participated in the negotiation process, which continued through the night and into

---

[16] Id.

[17] Id. ¶ 26.

[18] Id. ¶ 27.

[19] Id.

[20] Id. ¶ 28.

[21] Id. ¶ 31.

[22] Id. ¶ 30.

[23] Id. ¶ 37.

the next morning.[24]

During these negotiations, law-enforcement officers allegedly: (1) threatened Heckenswiler that he would be arrested on felony charges and taken to Bucks County Prison;[25] (2) disconnected the electricity to Heckenswiler's residence;[26] (3) taunted Heckenswiler, "repeatedly telling him that he was 'all talk'";[27] and (4) "blasted loud music or noise, and other screeching noises into the house."[28]

During the early morning hours of September 16, 2004, officers of the Pennsylvania State Police Bureau of Emergency and Special Operations "began firing hundreds of canisters of OC pepper spray" into Heckenswiler's residence, as well as "many lethal breaching projectiles."[29] This activity caused "massive destruction to the Heckenswiler residence, including damage to outbuildings, . . . and served only to exacerbate [Heckenswiler's] mental condition."[30] Heckenswiler had a gas mask, which he used to protect himself against the fumes.[31] Finally, shortly after the launching of the pepper-spray canisters and the projectiles, Heckenweiler

---

[24] Id. ¶¶ 33, 34.

[25] Id. ¶ 33(a).

[26] Id. ¶ 33(b).

[27] Id. ¶ 33(d).

[28] Id. ¶ 33(e).

[29] Id. ¶ 34.

[30] Id. ¶ 39. The Amended Complaint further alleges that the "attack" on the Heckenswiler residence "resulted in damage to the historic structure, including destruction of all 31 antique windows . . . in excess of $ 60,000." Id. ¶ 40.

[31] Id. ¶ 35.

"emerged from the house with a shotgun and handgun pointed into the air."[32] "He circled the backyard, yelling to police officers 'you're limiting my options.'"[33] "He returned to the back door whereupon he placed the shotgun in his mouth and pulled the trigger, ending his life."[34]

On September 15, 2006, the Plaintiffs filed this lawsuit to recover for injuries sustained by the acts described above. There are three Plaintiffs: (1) the Estate of John Heckenswiler ("the Estate"); (2) Deborah Heckenswiler; and (3) Terry Musselman, the Heckenswilers' landlord. The Complaint names eight Defendants, in addition to John/Jane Does 1–20. The named Defendants are: (1) Chief McLaughlin and Springfield Township ("The Township Defendants"); (2) Chief James Donnelly of the Bucks ERT, and the County of Bucks ("The County Defendants"); and (3) Colonel Jeffrey B. Miller of the Pennsylvania State Police, Sergeant Edward C. Murphy of the Pennsylvania State Police, the Pennsylvania State Police, and the Commonwealth of Pennsylvania ("The Commonwealth Defendants"). The Plaintiffs asserted claims against the Defendants based on eight different legal theories, seven of which survived the various defense motions to dismiss in some part.[35]

The Court entered a Scheduling Order on April 17, 2008, setting a deadline for the completion of discovery by October 15, 2007, and for the filing of case-dispositive motions by January 31, 2008, with a direction to adhere to the Court's required procedures for alternative

---

[32] Id. ¶ 36.

[33] Id.

[34] Id.

[35] Plaintiffs' federal claims are based on 42 U.S.C. § 1983, and Title II of the Americans With Disabilities Act, 42 U.S.C. §§ 12131–34. Plaintiffs also press claims for relief under Pennsylvania law based on negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress. Deborah Heckenswiler asserts claims under the Pennsylvania wrongful-death statute, and for loss of consortium.

method summary judgment.[36]  Upon a defense motion, discovery was stayed pending the disposition of several motions to dismiss the complaint, which occurred on May 21, 2007.  On June 15, 2007, Plaintiffs filed an amended complaint, asserting § 1983 excessive force claims, ADA claims and various state law claims against the various defendants.  A partial Motion to Dismiss was filed by several of the Defendants on June 28, 2007, which was dismissed as duplicative on January 7, 2008.  On August 10, 2007, Defendant Bucks County filed a Motion for Summary Judgment.   Plaintiffs filed a timely Response in the form of a three-page responsive pleading, but failed to produce a supporting memorandum of law, or any evidence in addition to their response.  Defendant Bucks filed a Reply on September 18, 2007.

On October 12, 15 and 25, 2007, Defendants each filed  Motions to extend the discovery deadline, as Plaintiffs had failed to appear for scheduled depositions.  The Court extended the discovery deadline due to Plaintiffs' counsel repeated failure to produce his clients for their scheduled depositions.[37]  On November 6, 2007, the Court impose a thirty day deadline to conduct the depositions.  When Plaintiffs again failed to present themselves for depositions, Defendant Bucks County filed a "Motion to Dismiss Involuntarily" Plaintiffs claims.[38]  This Motion was withdrawn, however, upon the completion of Plaintiffs' depositions on January 18, 2008, as again ordered by the Court.   On March 7, 2008, Defendant Bucks County filed a

---

[36] [Doc. No. 21, Attachment A]; the Court requires that the moving party file no more than three pages upon initially moving for summary judgment.  The non-moving party is then given an opportunity to respond, attaching all necessary documents and evidence required to survive summary judgment.  Upon the filing of this response, the moving party is afforded opportunity to file a reply, attaching its documents and evidence in rebuttal.

[37] Plaintiffs failed to even respond to the motion for an extension.

[38] [Doc. No. 43].

Motion to compel more complete answers to interrogatories, which the Court granted.[39]  We thereafter denied Bucks County's Motion for Summary Judgment without prejudice, to be re-filed at the close of the new discovery deadline.

On February 14th and 15th, 2008, Defendants Springfield Township, McLaughlin, Murphy, Miller, Donnelly, and the Pennsylvania State Police filed timely Motions for Summary Judgment.  Defendant Bucks County re-filed its timely Motion for Summary Judgment on March 28, 2008.  Plaintiffs failed to file a Response to any of these Motions.

After three months without Responses to the various Motions for Summary Judgment, and with no explanation from Plaintiffs' counsel, the Court granted Defendants Pennsylvania State Police, Murphy and Miller's requests to file reply briefs for the sole purpose of providing the Court with a record upon which to entertain their Motion for Summary Judgment.  Several weeks after these documents were filed, Plaintiffs finally requested an extension to file Responses to the Motions for Summary Judgment.   Because Plaintiffs were nearly four months past the fourteen-day time period to file responses to motions, contained in this Court's procedures for responding to motions for summary judgment, the Court denied Plaintiffs' Motion and their subsequent Motion for Reconsideration.  Later requests of the remaining Defendants were likewise denied as untimely.   The Court is now presented with four Motions for Summary Judgment, one Reply of the Pennsylvania State Police Defendants, and no Response from the Plaintiffs.

## II. DISCUSSION

The Plaintiffs have created an untenable situation for this Court, which cannot allow the

---

[39] [Docs. No. 54, 55].

proliferation and continued ignorance of Court orders and rules of procedure, as Plaintiffs' counsel has repeatedly exhibited.  Given this Court's published procedures for the filing of dispositive motions, and repeated case-management Orders explaining the same, Plaintiffs leave this Court without a record to review most of the contested claims.  Without addressing the issue of sanctions that may be imposed upon Plaintiffs or Plaintiffs' counsel for their repeated failure to comply with the Court's directions, an issue which the Court reserves, the Court hereby imposes an amended order for no other purpose but to secure some semblance of justice in this matter.[40]  Until then, counsel for the parties are required to properly and completely supply the Court with support for their respective positions on all pending motions as follows:

    1. Plaintiffs shall respond fully to each and every case dispositive motion filed on or before August 18, 2008;

    2. Each Defendant may respond by filing a reply by August 28, 2008;

    3. Plaintiffs may then request leave to file any sur-reply briefs by September 5, 2008.

**All counsel are again reminded to comply with this Court's preferred and required procedure for alternative method summary judgment, as set forth below and in Federal Rule of Civil Procedure 56 (b).**[41]  Unless and until Plaintiffs' counsel comply with this directive, the Motions for Summary Judgment cannot and will not be adjudged.  If the Plaintiffs fail to comply with this Order and its deadlines, the Court will have no basis upon which to deny the Defendants' Motions and will be compelled to dismiss this case on the merits.

---

[40] Any sanctions ultimately addressed by this Court will be considered separately and in addition to the prior request for sanctions in Document Number 41, which the Court took under reservation.

[41] Plaintiffs' counsel, in particular is directed to the Court's required "alternative method for summary judgment," as attached or referred to in documents numbered 21, 56, 64 and 66.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DEBORAH HECKENSWILER**, on her own behalf, and as Administratrix of the Estate of John Heckensweiler, deceased, et al., : : : : : **Plaintiffs,** : vs. : **CIVIL NO. 06-4151** : **CHIEF BRIAN K. MCLAUGHLIN, et al.,** : : **Defendants.** : | |

## ORDER

**AND NOW**, this 8th day of August, 2008, upon consideration of Defendants' Motions for Summary Judgment [Docs. No. 51, 52, 53, 58], Defendants Pennsylvania State Police, Murphy and Miller's Reply [Docs. No. 60, 61, 62], this Court's Orders [Docs. No. 64, 66], and this Court's Procedures for Alternative Method Summary Judgment, the Court hereby imposes the following Order:

1. Plaintiffs shall respond fully to each and every case dispositive motion filed on or before August 18, 2008;

2. Each Defendant may respond by filing a reply by August 28, 2008;

3. Plaintiffs may then request leave to file any sur-reply briefs by September 5, 2008.

It is so **ORDERED**.

                                                                             **BY THE COURT:**
                                                                             /s/ Cynthia M. Rufe

                                                                             _____
                                                                             **CYNTHIA M. RUFE, J.**

**Attachment A**

**Judge Rufe's Required Procedure on Summary
Judgment for Those Moving under Rule 56(b)**

Rule 56(b) of the Federal Rules of Civil Procedure provides that:

> A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

1.  **Initial Filing of Moving Party**:  A party referred to in Rule 56(b) and moving under Rule 56(b) may move without reference to supporting affidavits or other evidence and, in doing so, the party making the motion shall:

    (1)   identify in outline form the issue(s) and/or sub-issue(s) as to which the Motion is directed, for example, referring to the pleadings;
    (2)   affirm, on the basis prescribed in Rule 11, that there is no legally sufficient evidentiary basis to support the issues so identified; and
    (3)   request judgment as provided in Rule 56(c).

    *Note: The initial filing by the moving party generally should not exceed three (3) double-spaced, type-written pages.*

2.  **Response of Non-Moving Party**:   The party against whom the Motion for Summary Judgment is addressed shall file a Response not later than 14 days after the Motion for Summary Judgment is received.  The Response, subject to provision of Rule 56(e) and (f), shall be supported with affidavits, depositions, documents or other evidence permitted by those provisions.  Where applicable, references to such evidence must include **specific** citations to exhibit, page, and line number.

3.  **Reply of Moving Party**:  The movant shall file a Reply as permitted by Rule 56(e) and (f). Such a Reply must be filed not later than 10 days after the Response described in paragraph (b) is received.  The Reply must **specify** the relevant exhibit, page, and line numbers when referring to the record.

4.  **Sur-Reply of Non-Moving Party (Optional)**:  The party against whom the Motion for Summary Judgment is directed may, within 10 days after the Reply is received, file a Sur-reply to the reply described in paragraph (d) above.  The Sur-reply must **specify** the relevant exhibit, page, and line numbers when referring to the record.

*The purpose of these Instructions is to encourage the parties in their dispositive motion to track the natural order of trial where the plaintiff sets forth its cause and the defendant then responds.*